SEP 29 2006
OCT 31 2006

U.S District. Court. Dist. of CONN

TYRONE Grant. v. City of New Haven. 302 CV 2212 (SRU)

9.26.06

2006 DEC -1 A 9:38
U.S. DISTRICT COURT

Plaintiff Acting prose. Files this motion For Reconsideration] Rule 52(b) Writ of mandamus 28 USCA 1361] this case Returned back to this court. For direct Redress As A matter of Law] A motion filed For court to Amend Its decision] A court Action to correct this substantive mistake] menefist Error of Law And Fact] F.R.Civ P. Rule 59(E) Newly discovered case Law] Evidence *A predicatE Adjudicative proceeding by U.S. Court of Appeals which this court will *As A matter of Law take Judicial Notice] 326 F3d 63 (2d ciR) Green v. Welsh.* Cited 956 F2d 30 (2d ciR 1992] A substantive Right As A matter of state Law] to Reopen this case] 524(E) of U.S Bankr Code Chief Judge Oakes] held A plaintiff can pursue A suite Against A debtor solely to Recover] Against Insurer] city of N.H.* *the defendant the city of New Haven] Relied on Erroneous state court Judgment. Which Is void (No) longer. Equitable the Judgment Has No prospective Application *Act of congress Freed debtor Fountain of Its personal obligation] to TY-Grant. While Ensuring that (No) one Else Reaped similar Benefit Bankr code 11 USCA 524 *727] the Bankr. Court Is Prohibited by 524(E) From preventing the Enforcement] * Of such guarantess] Law of case Plaintiff third party Beneficiary under progressive *Policy subsequently A duty Is owed to Plaintiff that the Law of this case *.* As per LC Grat As per Freedman 1996] the trial court has continuing Jurisdiction to EffectuAte *Its prior Judgments] In Favor of TY-Grant] by Its Inherent powers] 191 CONN 555] 468 A2d 1230 demand For Equal protection of the Law] Alleged simular situated persons have been treated differently states this cause of Action] 18 F3d 188] 2d ciR 1994] A demand For order of Judgment F.R.Civ P. R.54(b) For Excution Retention sum certain 20 million dollars. ** Negligent Entrustment. Hiring Retention supervision of Fountain garage] In violation of state Law sec 38A-371 failure to Provide Insurance operation Is prohibited.*

PlaintiffCitinG BankR Act. 16 301 EtSeq 11USC [1976Ed] 34.701Et Seq] JudiciAlNotice
Citing UnderHill v. RoyAl (2) 769 F2d 1426] 1985 11USC (34) (1976) *
*Citing the Court [686 F2d 593] (1982) 7th (CiR) Chief Judge Cummings

[Notice] CreditoR Approval of BankRuptcy Plan doES Not discharge bankRupts
guArantors.] AS the City of New Haven] the BankR discharge ARises *
* by Operation of Federal Law] In bankRuptcy] Not by consent of CreditoRS]
* Payments which Effects discharge IS (Not) Consideration FoR ANY Promises
of Creditor] much less FoR ONE to Release NonParty obligAtion thus Alle
* Creditor Receipt of discharge Payment of 80,000.00] did Not EstoP It *
to Collect Rest of debt from guArantoRS] AS the city of New Haven] Alleged
* Justifiable Reliance Cited Re, kornbluth 65 F2d 400] 2d CiR] JudiciAl Notice *
Sec 16 Provides that the liAbility of A Person who IS A codebtoR OR with OR
guArantoR OR IN ANY manneR A Surety FoR the bankRupt] Shall Not be Altered
by discharge of such BanKRupt] the BanKR CouRt Has (No) PoweR to discharge the
liAbilities of A bankRupts guArantoR] See Sec 1-27 Uniform AcKnowledg
ement Act, this IS A Agreement by StatE Law] that IS Effective] Relied ON *
Cause of Action Breach of Contract CGS 52-136] Founded on tort] the city of N.H. will
Not be Allowed to defeat the PurPosE] FoR Which this Contract has been Procurred
Citing ALR2d 1041-1070] 10,000.00 Penalty FoR Repetitive Issuing of License,
IN Violation of liAbility Risk Retention Act of 86] Procedural Law Regulation of INS.De
FailuRE to Properly Cancell Keep Policy INforce 38A-175 (F) FailuRE to Provide Self Insurance
38A.250] Complet operation liAbility] operation IS PRohibited] City Allowed Fountain to OperatE
Violating StatE Law] After 1992 Injury to TyRONE Grant] IS Vicariously liAble by Law *

* FoR All the FoREgoing Reasons Plaintiff Files this *,
[motion] Pursuant to 28 USCA 1291 FoR the Excution Retention of the
* Amount Sum, certain, 20. million dollaRS AS Sued FoR [orginally]
* both the StatE of Conn. And Ty Grant Have AN Compelling Interest IN the timely Enforcement of suit.

1112, 1118 (5th Cir. 1981). Accordingly, it has been held that provisions for seniority rights "designed or operated to discriminate on an illegal basis is not a 'bona fide' system." *Acha v. Beame*, 570 F.2d 57, 64 (2nd Cir. 1978); and see *United Airlines, Inc. v. Evans*, 431 U.S. 553, 559, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977).

[3] Section 703(c)(1) of Title VII, 42 U.S.C. § 2000e–2(c)(1), provides that:

> It shall be an unlawful employment practice for a labor organization—
>
> to exclude . . . from its membership, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin; . . . .

Thus, it is clearly a violation of this section for a union, international or local, to maintain a seniority system for the purpose of excluding Negroes from membership because of their race; and certainly, such a system is not protected by the exception in section 703(f) of Title VII. *Hameed v. Intern. Ass'n of Bridge, etc.*, 637 F.2d 506 (8th Cir. 1980); *Glus v. G. C. Murphy Co.*, 629 F.2d 248 (3rd Cir. 1980); *Freeman v. Motor Convoy, Inc.*, 409 F.Supp. 1100 (N.D.Ga. 1975); *United States by Clark v. United Papermakers & Paperworkers*, 282 F.Supp. 39 (E.D.La.1968). Therefore, after findings that the Blacksmiths negotiated and maintained their seniority system for the illegal purpose, and with the intent and effect, of discriminating against Negroes because of their race, the district court could only conclude that the system is not bona fide within the meaning of section 703(h) of Title VII. *International Bro. of Teamsters v. United States*, 431 U.S. 324, 346, 97 S.Ct. 1843, 1860, 52 L.Ed.2d 396 (1977); *Sears v. Atchison, Topeka & Santa Fe Ry. Co.*, 454 F.Supp. 158, 179 (D.Kan.1978); *rev'd on other grounds*, 645 F.2d 1365 (10th Cir. 1981). For these reasons, the judgment of the district court is affirmed.

UNION CARBIDE CORPORATION, Plaintiff-Appellee,

v.

F. Allen NEWBOLES and Mary V. Newboles, Defendants-Appellants.

No. 81–2851.

United States Court of Appeals, Seventh Circuit.

Submitted May 3, 1982.*

Decided Aug. 16, 1982.

Guarantors of bankrupt debtor appealed from judgment of the United States District Court for the Southern District of Indiana, Evansville Division, Gene E. Brooks, J., granting summary judgment in favor of creditor. The Court of Appeals, held that: (1) creditor's approval of debtor's Chapter 11 plan of arrangement did not operate to discharge guarantors even though proposed plan purported to discharge claims against guarantors, and (2) creditor's receipt of discharged payment of $14,337.01 did not estop it to collect rest of debt from guarantors.

Affirmed.

**1. Bankruptcy ⚡428**

Section of Bankruptcy Act governing codebtors, guarantors and sureties for bankrupts provides the discharge of debtor itself has no effect upon liability of cosigners on note. Bankr.Act, § 16, 11 U.S.C. (1976 Ed.) § 34.

**2. Bankruptcy ⚡691**

Creditor's approval of bankruptcy plan does not discharge bankrupt's guarantors.

**3. Bankruptcy ⚡404(1)**

Bankruptcy discharge arises by operation of federal bankruptcy law, not by contractual consent of creditors.

* On April 28, 1982, we granted appellants' motion to consider the case on the basis of the briefs and record alone.

**4. Bankruptcy ⚬=647, 691**

Majority of creditors must approve of debtor's plan for debtor to be discharged, so that in many instances one creditor's approval or disapproval will have no effect even in bankruptcy proceeding; thus, where single creditor's vote is determinative, imputing extra-bankruptcy significance to it, to effect that acceptance of plan discharges bankrupt's codebtors, violates specific command of section of Bankruptcy Act that provides liability of guarantor shall not be altered by discharge of bankrupt. Bankr.Act, § 16, 11 U.S.C. (1976 Ed.) § 34.

their Intent

**5. Bankruptcy ⚬=428, 691**

Import of section of Bankruptcy Act governing codebtors, guarantors or suretors for bankrupt is that mechanics of administering federal bankruptcy laws, no matter how suggestive, do not operate as private contract to relieve codebtors of bankrupt of their liability; thus, even though debtor's Chapter 11 plan expressly purported to discharge guarantors of bankrupt, guarantors were not discharged. Bankr.Act, §§ 16, 301 et seq., 11 U.S.C. (1976 Ed.) §§ 34, 701 et seq.

Judicial Notice

**6. Bankruptcy ⚬=428**

Payment which effects discharge is not consideration for any promise of creditors, much less for one to release nonparty obligors; thus, creditor's receipt of discharge payment of $14,337.01 did not estop it to collect rest of debt from guarantors of debtor.

---

F. Wesley Bowers, Evansville, Ind., for defendants-appellants.

Stephen W. Terry Jr., Baker & Daniels, Indianapolis, Ind., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, COFFEY, Circuit Judge, and TEMPLAR,** Senior District Judge.

PER CURIAM.

Union Carbide Corporation loaned some $225,000 to New-Kro Oil Company. New-Kro gave Union Carbide a promissory note in return for the loan, and the President of New-Kro and his wife, F. Allen and Mary V. Newboles, personally guaranteed New-Kro's repayment of the loan. When New-Kro defaulted on its repayment of the loan, Union Carbide brought this diversity action against Mr. and Mrs. Newboles and New-Kro on October 31, 1978 in an attempt to recover the approximately $70,000 still owing on the note. On November 8, 1978, New-Kro petitioned for relief under Chapter XI of the Bankruptcy Act of 1898. New-Kro filed an amended proposed plan of arrangement for settlement of its unsecured debt on September 14, 1979. The plan allowed a twenty percent return on unsecured claims, and contained the following provision:

*Impact of Arrangement on Guaranty Holders*

Acceptance and confirmation of this Arrangement shall constitute a full settlement, satisfaction and discharge of all claims, demands, actions, causes of action or otherwise against not only the Debtor, but also against any other persons or entities who have entered into guaranty or indemnity agreements with unsecured creditors or who have endorsed commercial paper for the benefit of the Debtor. It is the intent of this Arrangement that upon its acceptance and confirmation, any creditors asserting claims arising out of agreements against persons or entities other than the Debtor by reason of indebtedness of the Debtor, shall be required to look solely to the Debtor for payment of such indebtedness under the terms of this Arrangement.

The plan was approved by a majority of the creditors, including Union Carbide, and was confirmed by the bankruptcy court. Pursuant to the plan New-Kro paid Union Carbide $14,337.01, leaving $55,715.90

** The Honorable George Templar, Senior District Judge of the United States District Court for the District of Kansas, is sitting by designation.

paid principal on the note. The district court then granted summary judgment for Union Carbide against Mr. and Mrs. Newboles in the amount of the unpaid principal plus interest of $3,734.98, and Mr. and Mrs. Newboles appeal.

[1, 2] On appeal, Mr. and Mrs. Newboles argue that their liability as guarantors on the note was erased by Union Carbide's approval of the bankruptcy plan. In particular, Mr. and Mrs. Newboles argue that Union Carbide's approval of the above-quoted provision in the plan and acceptance of New-Kro's discharge payment worked an accord and satisfaction under Indiana law, which the district court must respect when sitting in diversity. But Section 16 of the Bankruptcy Act of 1898, 11 U.S.C. § 34 (repealed effective October 1, 1979), is to the contrary. Section 16 provides that "[t]he liability of a person who is a co-debtor with, or guarantor or in any manner a surety for, a bankrupt shall not be altered by the discharge of such bankrupt."[1] Section 16 makes clear that the discharge of New-Kro itself had no effect upon the liability of Mr. and Mrs. Newboles on the note, and indeed we have held that the bankruptcy court has no power to discharge the liabilities of a bankrupt's guarantor. *In re Diversey Building Corp.*, 86 F.2d 456, 458 (7th Cir. 1936), certiorari denied, 300 U.S. 662, 57 S.Ct. 492, 81 L.Ed. 870. We hold that a creditor's approval of the bankruptcy plan does not discharge the bankrupt's guarantors either.

[3–5] A bankruptcy discharge arises by operation of federal bankruptcy law, not by contractual consent of the creditors. *In re Kornbluth*, 65 F.2d 400, 402 (2d Cir. 1933). A creditor's approval of the plan cannot be deemed an act of assent having significance beyond the confines of the bankruptcy proceedings, simply because the gamesmanship imported from state contract law into the bankruptcy proceedings would be intolerable. Since a majority of the creditors must approve the debtor's plan for the debtor to be discharged, in many instances one creditor's approval or disapproval will have no effect even in the bankruptcy proceeding. In the case that a single creditor's vote is determinative, imputing extra-bankruptcy significance to it for that reason violates the specific command of Section 16 that "[t]he liability of a * * * guarantor * * * shall not be altered by the discharge of [the] bankrupt." This case is no different because the plan expressly purports to discharge guarantors of the bankrupt. The import of Section 16 is that the mechanics of administering the federal bankruptcy laws, no matter how suggestive, do not operate as a private contract to relieve co-debtors of the bankrupt of their liabilities. See *R. I. D. C. Industrial Development Fund v. Snyder*, 539 F.2d 487, 490 n. 3 (5th Cir. 1976) (creditor's approval of Chapter XI bankruptcy arrangement that purported to eliminate the underlying debt did not prevent the creditor from having recourse against the guarantor), certiorari denied, 429 U.S. 1095, 97 S.Ct. 1112, 51 L.Ed.2d 542; *United States v. George A. Fuller Co.*, 250 F.Supp. 649, 656, 658 (D.Mont.1966).

[6] Similarly, the payment which effects a discharge is not consideration for any promise by the creditors, much less for one to release non-party obligors. *In re Kornbluth*, 65 F.2d 400, 402–403 (2d Cir. 1933); *Post v. Losey*, 111 Ind. 74, 12 N.E. 121 (1887). Thus Union Carbide's receipt of the discharge payment of $14,337.01 does not estop it to collect the rest of the debt from Mr. and Mrs. Newboles.

Therefore we affirm the order of the district court granting summary judgment for Union Carbide.

1. Section 16 was rewritten and reenacted in the Bankruptcy Reform Act of 1978 at 11 U.S.C. § 524(e).

CV 03 0475403S :SUPERIOR COURT

TYRONE GRANT :JUDICIAL DISTRICT OF NEW HAVEN

VS. :AT NEW HAVEN

W. MARTYN PHILPOT, JR. ET. AL. :SEPTEMBER 22, 2003

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

## I. STATEMENTS OF FACTS

On June 22, 1992 the plaintiff, Tyrone Grant, ("Grant") was assaulted on the premises of Fountain's Garage ("Fountain's") on Stiles Street in the City of New Haven. While retrieving his car from storage Grant was attacked by Fountain's employee Arnold Ness ("Ness"). Grant sustained injuries to his head requiring sixty (60) stitches. Consequently, Grant commenced an action against Fountain's and Ness sounding in intentional tort/assault. A default judgment in the amount of $950,000.00 was entered on Grant's behalf on March 28, 1995 by Judge Harold Mulvey.

Consequently, Fountain's sought protection under Chapter 11 of the United States Bankruptcy Code. Thereupon, Grant became an unsecured creditor. Attorney Philpot's ("Philpot") office continued to represent Grant's interest during bankruptcy proceedings including the confirmation of Fountain's Chapter 11 plan. Through negotiations between Philpot's office, the Chapter 11 Trustee and Fountain's, Grant's judgment was compromised to the amount of $80,000.00 and thereby incorporated into the reorganization plan approved by the Court on November 20, 1996.

Legal Advice given

None

Legal Malpractice Claims 199 BR 635

Collection Efforts are ongoing Not been halted by Bankr. Petition 197 BR 721 F.D.C.P.A. Sheriff Violated the Act

178 BR 809

* 956 F2d 30 2d Citing 65 F2d 400 2d Cir 686 F2d 593 7th Cir 1982 769 F2d 1426 1985

* Superior Court Refused to waive Fee for Poor

[13] Another equally objectionable provision of the Debtor's reorganization plan lies in its forbearance terms. Section 524(e) of the Bankruptcy Code provides that a bankruptcy discharge does not discharge the obligations of any non-debtor party. Courts have generally construed this statutory provision as prohibiting bankruptcy plans from modifying or releasing the obligations and liabilities of guarantors under third party guarantees and prohibiting bankruptcy courts from preventing the enforcement of such guarantees.[17] While the Third Circuit has not definitely ruled on the issue of whether non-debtor releases and permanent injunctions are appropriate or permissible, it has stated that at a minimum, any plan which provided for such would have to reflect what it called the "hallmarks" of permissible non-consensual releases; to wit: fairness, necessity to the reorganization, the exchange of reasonable consideration, and specific factual findings by the Bankruptcy Court relative to these factors. *See, In re Continental Airlines,* 203 F.3d 203, 214 (3d Cir.2000)

Fremont invokes *Continental* and argues vociferously that its requirement of fairness, necessity, and consideration are unmet. The Debtor, on the other hand, protests that *Continental* is not implicated because, contrary to Fremont's contentions, the plan does not include either a release or a permanent injunction in favor of the guarantors. The Debtor is technically correct, insofar as it goes.

The injunctive provisions of plan are characterized by the Debtor as a "forbearance" for a finite term of seven years. The Debtor is correct that the temporal nature of the injunction places it on a somewhat different footing, at least from a jurisdictional perspective. *See* 25 No. 1 *Bankruptcy Law Letter* 1 (Jan 2005) ...

porary or status quo injunctions have bee[n] sanctioned by the Supreme Court as a[n] available tool to promote a Debtor's reo[r]ganization effort. *Continental Illino[is] Nat. Bank & Trust Co. of Chicago v. Ch[i]cago, R.I. & P. Ry. Co.,* 294 U.S. 648, 67[5], 55 S.Ct. 595, 605–606, 79 L.Ed. 11[10] (1935); *Celotex Corp. v. Edwards,* 514 U[.S.] 300, 310, 115 S.Ct. 1493, 1500, 131 L.Ed.2[d] 403, (1995); *see also In re Seatco, Inc.,* 2[57] B.R. 469, 478, modified at 259 B.R. 27[9] (Bankr.N.D.Tx.2001) (holding that flaws [in] Debtor's proposed Chapter 11 plan, pu[r]porting to temporarily enjoin creditor fro[m] pursuing its rights against non-debto[r] such as a guarantor, while a creditor [was] receiving payments under plan, did [not] effect liability of non-debtor in violatio[n of] bankruptcy statute, where injunc[tion] would continue only while debtor was c[ur]rent in its plan payments and would ter[mi]nate automatically, with no need for [fur]ther court action if debtor defaulted.)

In the interest of completeness, [the] Court will consider the confirmabilit[y of] the Debtor's plan under both variants [of] permanent and temporary injunctions.

A. *Permanent Injunctions*

Section 524(e) of the Bankruptcy [Code] explicitly states that the "discharge [of a] debt of the debtor does not affect [the] liability of any other entity on, or [the] property of any other entity for [such] debt[.]" 11 U.S.C. § 524(e). Based [on] this provision, three circuit courts [have] held that permanent injunctions discha[rg]ing non-debtors from liability are no[t al]lowed in reorganization plans. *See* [...] *sorts International, Inc. v. Lowensc[hu]* [...] 67 F.3d 1394, 1401 (9th Cir.1995) [...] Court has repeatedly held, without exce[p]tion, that § 524(e) precludes bankrupt[cy] courts from discharging the liabilities o[f] ...

*Zale Corp.),* 62 F.3d 746, 760 (5th Cir.1995) (permanent injunctions discharging a potential debt of a nondebtor are not allowed by bankruptcy code); *Landsing Diversified Props.—II v. First National Bank & Trust Co. (In re Western Real Estate Fund, Inc.),* 922 F.2d 592, 601–602 (10th Cir.1990), *modified sub nom., Abel v. West,* 932 F.2d 898 (10th Cir.1991) (holding that the automatic stay "may not be extended post-confirmation in the form of a permanent injunction that effectively relieves the nondebtor from its own liability to the creditor.").

However, other circuit courts have ruled that permanent injunctions against non-debtor parties are allowable under certain circumstances. The Seventh Circuit allows consensual, non-coercive permanent injunctions which are essential to a plan of reorganization. *See In re Specialty Equip. Cos., Inc.,* 3 F.3d 1043, 1047 (7th Cir.1993) ("[C]ourts have found releases that are consensual and non-coercive to be in accord with the strictures of the Bankruptcy Code. Unlike the injunction created by the discharge of a debt, a consensual release does not inevitably bind individual creditors. It binds only those creditors voting in favor of the plan of reorganization"). The Second, Fourth and Sixth Circuits permit non-consensual permanent

[18]. In *Patton v. Bearden,* 8 F.3d 343, 349 (6th Cir.1993), the Sixth Circuit observed:

Some courts have held that the debtor's stay may be extended to non-bankrupt parties in 'unusual circumstances.' *See A.H. Robins Co. v. Piccinin,* 788 F.2d 994 (4th Cir.), *cert. denied,* 479 U.S. 876, 2107 S.Ct. 251, 93 L.Ed.2d 177 (1986); *In re Kanawha Trace Dev. Partners,* 87 B.R. 892 (Bankr. S.D.Va.1988). Such circumstances usually include when the debtor and the non-bankrupt party are closely related or the stay contributes to the debtor's ...

19. *Inu* ... *Inte* ... 2001, ... perma... 524(e), ... ply onl... divest t...

Grant commenced the present action on December 12, 1995 by service of process against several defendants, including Pastore and the City. His amended complaint of July 3, 1998, contains two counts that are relevant to the motion now before me. The first count, directed against Pastore, alleges that Pastore "was negligent in failing to require Fountain's to obtain appropriate insurance coverage." The second count, directed against the City, seeks indemnification pursuant to Conn. Gen. Stat. § 7-465. Grant alleges no independent breach of duty by the City. Because the viability of the second count necessarily turns on the viability of the first, only the first count need be discussed here.

On March 20, 1998, Pastore and the City filed the motion for summary judgment now before me. The motion claims both the running of the statute of limitations and the absence of any duty owed by Pastore to Grant. The motion was heard on July 13, 1998.

Grant's first problem is a problem of substantive law. The gravamen of the first count of Grant's complaint is that Pastore negligently failed to enforce New Haven Ordinances § 29-109. That ordinance provides, in pertinent part, that, "No license shall be issue to an applicant [for a towing license] until he shall have deposited with the chief of police. (b)...[a] garage liability policy, covering the operation of applicant's business, equipment, or vehicles, for any bodily injury or property damage. This policy shall be in an amount acceptable to the board of police commissioners."

As described in the Chodos decision, Fountain's was covered by a policy with Progressive Casualty Insurance Co. The problem, from Grant's point of view, is that the Progressive policy had certain exclusions, including an exclusion for intentional acts. (The actual policy, which is not itself in evidence may have had other exclusions as well, but since the

(3)

State Law Violation Sec 38A-542 liAbility Risk Retention Act of 86]
A Procedural law And Regulation of State of CONN Insurance Dept.
the Chief of Police Had the Requisite Knowledge of Municipal default.
Sec 7-495] NONCOMPLIANCE] 225,000.00] 25 Percentum of Aggravated PrinciPle
Amount of 1 million dollar Insurance by bond on File by PrinciPle And Surety
29-109 City Ordin Provides In Pertinent Part (No) License Shall be Issued to AN
Applicant for A towing license until he Shall have deposited with chief of Police
A garage liAbility Policy] (1) Law of case Policy Inconsistent with Requirements
*Set Forth by the city of New Haven As Per Freedman 1996] (2) Affidavit from
*Progressive Insurance Said Fountain does (Not) have A garage liAbility Policy]
Sept. 28 1998] by Pam | Daguerry Branch manager 28 USCA 1746] Required
*Verification of Insurance] See April 7, 1996] Law of Case] See April 25 1996]
Fraud by the city of New Haven] Change Effectively from Progressive INS. Co to thompson
Peck. Policy # S62520375] A Violation of State Law] 38A-321 liAbility of Insurer under
*this Policy prevents Cancellation After Progressive And Fountain became liAble Proved *
A Renewal did (Not) Occurr [309 BR 520] the City of New Haven Is Vicariously liAble *
For this Injury] Proved by City ordin. Violation] 29-109] the city of N.H. Absolutely liAble
CGS. 52-557 N(B) Chief Negligent In the Performances of Functions from which the city
of N.H. derives A Special Corporate Profit, Pecuniary Benefit from towing Operation
7-465- From chief. Independent breach of duty] Alleged. degress of care by the city of N.H
Citing. Remann.] 58 BR 953] when Insurer Is liAble for debtor torts] this liAbility Is
Personal by sec 524(A)(2) ONLY to the extent Necessary to sustain Recovery] from the Insurer
*the mann Court wrote were we (Not) to Permit the State Court Action] the INS. Co. And the
City of New Haven would Escape liAbility] And be unjustly Enriched] 7x-Grant Aggrieved
Party Is Entitled to Judgment to be Paid As A matter of State Law. Now Proved

For All the Foregoing Reasons

*this Dist. Court Is to Invoke the Cause And Prejudice Rule Provides Protection from fundamental Injustices

Law of Case Impeached [Concealed] Violation Fed Criminal Bankr Fraud Stat. Violation Bankr Act 17A(2) section 35A(2) of former title 11 comes into play

Judicial Notice * Creditor Had A Right to Payment 11 USC 101(4)(A) * Independant Right Exist - And Violated

STATE OF CONNECTICUT

No. CV-94 0358105 : SUPERIOR COURT

TYRONE GRANT, of New Haven, Connecticut : JUDICIAL DISTRICT OF NEW HAVEN AT NEW HAVEN

V.

FOUNTAIN'S GARAGE, INC., of New Haven, Connecticut and ANDRE NESS, of New Haven, Connecticut : June 13, 1995

Present: Hon. Howard F. Zoarski, Senior Judge

SUPPLEMENTAL JUDGMENT

This action came before the Court (Mulvey, STR) on March 28, 1995, and it was adjudged that the plaintiff, Tyrone Grant, recover of the defendants, Fountain's Garage, Inc. and Andre Ness, the sum of $950,000.00. This action came thence to April 18, 1995, when the plaintiff filed a bill of costs; thence to May 4, 1995, when the Court ordered costs taxed; thence to May 3, * 1995, when a property execution filed by the plaintiff against the defendant Fountain's Garage was issued; thence to May 26, 1995, when the defendant, Fountain's Garage, filed a motion to set aside the judgment; thence to the present time, when the plaintiff filed an objection to the motion to set aside the judgment, and when the parties appeared and were heard on the motion to set aside the judgment.

[margin: Part of Bankr Case] [margin: When Scott 2nd Dail]

* The Court, after hearing the parties, finds for the plaintiff, Tyrone Grant, as against the defendant Fountain's Garage. * 28 USC 1291 *

Attachment of Property of defendant give Court Jurisdiction

Whereupon, it is adjudged that the motion to set aside the judgment should be, and it is, denied.

By the Court,

Hon. Howard F. Zoarski
Senior Judge

**Subject:** An earlier decision... [court denied the insurer's motion for summary judgment]
**Date:** Aug 11, 2004 5:27 PM

**TYRONE GRANT v. CITY OF NEW HAVEN, ET AL**

**NO. CV96-0382068**

**SUPERIOR COURT OF CONNECTICUT, JUDICIAL DISTRICT OF NEW HAVEN, AT NEW HAVEN**

**1996 Conn. Super. LEXIS 2178**

**August 12, 1996, Decided**
**August 15, 1996, FILED**

**NOTICE: [*1] THIS DECISION IS UNREPORTED AND MAY BE SUBJECT TO FURTHER APPELLATE REVIEW. COUNSEL IS CAUTIONED TO MAKE AN INDEPENDENT DETERMINATION OF THE STATUS OF THIS CASE.**

CASE SUMMARY

PROCEDURAL POSTURE: Defendant insurer moved for summary judgment against plaintiff in a case in which plaintiff claimed that the insurer owed him a duty of care as a third party beneficiary under the insurer's policy.

OVERVIEW: The insurer provided coverage to its insured that was allegedly inconsistent with the requirements set forth by the city. Subsequently, the insurer denied plaintiff compensation for his injuries, a result that might not have occurred had the insured possessed the correct coverage. Subsequently, plaintiff filed suit and the insurer moved for summary judgment, arguing that it did not owe a duty to plaintiff. The court denied the motion, finding that there was a genuine issue of material fact as to whether plaintiff was a third party beneficiary under the insurance policy and whether the insurer owed a duty to plaintiff. Subsequently, the insurer filed a second motion for summary judgment, claiming that the statute of limitations had run on plaintiff's claim. The court noted that if the parties were in a special relationship giving rise to a continuing duty, then the continuing course of conduct doctrine might apply to the limitations period. Because a full trial was needed to explore the parties' relationships, the court denied the motion.

OUTCOME: The court denied the insurer's motion for summary judgment.

JUDGES: Samuel S. Freedman, Judge

OPINIONBY: Samuel S. Freedman

EARlid
2h(Y- M Linch (Examin

OPINION: MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT # 111

The defendant, Progressive Casualty Insurance Company, argues that the court should grant its motion for summary judgment because the statute of limitations has run on the plaintiff's claims. On February 13, 1996, the defendant filed a prior motion for summary judgment arguing that Progressive never owed a duty to the plaintiff. On April 7, 1996, Judge Gray denied Progressive's motion for summary judgment on the grounds that a genuine issue of material fact exists as to whether the plaintiff was a third party beneficiary under Progressive's policy, and * subsequently, whether the defendant owed a duty to the plaintiff. That is the law of the case. * Since a genuine issue of material fact exists as to the plaintiff's relationship with the defendant and whether the defendant owed a duty to the plaintiff, a genuine issue of material fact exists as to the extent of that relationship [*2] and duration of that duty. If the parties were in a special relationship giving rise to a continuing duty, then the continuing course of conduct doctrine may apply to the limitations period. See Connell v. Colwell, 214 Conn. 242, 254-55, 571 A.2d 116 (1990) (holding that HN1"a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act" may toll the statute of limitations.) The parties did not argue or brief this issue, and the court is not convinced, at this stage of the proceedings, that the defendant is entitled to judgment as a matter of law.

This case concerns an insurance company that allegedly provided coverage to its insured that was inconsistent with requirements set forth by the City of New Haven. In the process, the company denied the third party compensation for his injuries, a result which might not have occurred had the insured possessed the correct coverage. This case involves complex and important public policy issues concerning insurance coverage and New Haven's desire to ensure that people injured within the city limits have avenues of recovery. HN2Summary judgment is "ill adapted [*3] to cases of a complex nature or to those involving important public issues, which often need the full exploration of trial." United Oil Co. v. Urban Redevelopment Commission, 158 Conn. 364, 375, 260 A.2d 596 (1969). Accordingly, this case should proceed to trial where these issues may be properly decided.

Samuel S. Freedman, Judge

11USC1014A Full Right to Payment Asserted

11USC1019A debt owed by defendants, Asserted

Judicial Notice Bankr Proceeding Are governed by the federal Bankr Code and Rules which expressly exempt Insurance companies from their purview
199 [235 BR 713

the statutory command for notice embodies A basic principle of Justice] that A reasonable opportunity to be Heard must precede A Judicial denial of A party's claimed Rights [2 96-97, 73 SCt As A matter of due process] Person Entitlement to money] From debtor will be destroyed by the Judgment Is Entitled to Notice] from both Courts] 1141-01(b) this Law of case] Action [fraudulent M conceal

This is sort of like Grand Central Station, but we have a great time. We do good math in here," Crotty said.

It's like this every Wednesday afternoon in Crotty's class, where about 50 middle school students from across the city have spent the past 10 weeks preparing for Saturday's regional round of MATHCOUNTS, an annual math contest for more than 350,000 students nationwide.

the city's mostly minority students role models for academic achievement.

"In our school, we've got nine students in advanced placement calculus and eight are minority kids and, to me, that's very important," Crotty said. "That's a major thing: I want these middle school kids to know that they can excel in math, too."

Crystal Astrachan, a 14-year- ... last year and it's still helping me in class now."

Sharnita Solomon, a 17-year-old Career senior, says the math drills she puts her young charges through often stump her.

"This math is *hard*," Solomon said. "As you go further up and up in math, you forget some of this stuff."

If the New Haven team gets through the regional contest, it will compete in a statewide com- ... said. "But everyone gets so excited about it here, I sort of like it now."

Jermell Mitchell, a 16-year-old Career senior, wishes there had been a similar program when he was in middle school. The experience, he said, has him thinking of becoming a math teacher.

"I really like working with the kids," Mitchell said. "I'm learning off them and they're learning off me."

Yale-New Haven ... el's hospitals all ... ioactive material entering ... er system from those ins... either meets or falls well below all health and safety standards and poses no health risk.

No action was taken by the aldermanic Legislation Committee, which held the hearings. Environmentalists want the city and industry to use "ecological engineering" to naturally and safely break down sludge without chemicals or burning.

# Court makes city man rich, if he ever gets his money

By Josh Kovner
Register Staff

NEW HAVEN — Tyrone Grant has learned that it's one thing to win a $950,000 court judgment against a towing outfit after being bashed with a baseball bat, but that it's quite another thing to collect it.

State Trial Referee Harold M. Mulvey in March 1995 found Fountain's garage liable for the injuries Grant said he sustained when he went to the Stiles Street business to reclaim his car, which had been towed for violations.

Grant, 36, who lives on Orchard Street, said he was assaulted with a bat by Andre Ness, a garage employee.

But despite the court ruling, he's yet to see a nickel.

Fountain's — one of 10 garages under contract to tow for the New Haven police — declared bankruptcy after the judgment.

Since then, Grant has been arrested for allegedly pestering city lawyers for his money.

"He's depressed," said his attorney, W. Martyn Philpot Jr. "He's suffered a 60-stitch cut and the side of his head is numb. He went to court and won a judgment. Now he feels steamrollered by the system."

Grant recently sued the city and Fountain's insurance company, but both deny any responsibility. A trial on that case is still months away.

"Mr. Grant may have the most genuine of claims — but not against the city," said Deputy Corporation Counsel Patricia Cofrancesco. She's been visited several times by Grant at her City Hall office.

The garage is on call with nine other towing outfits to hook cars that are damaged in accidents or ticketed by New Haven police.

Grant's ordeal began when police tagged his unregisterd 1980 Buick Skylark.

In court papers, Grant said he walked to Fountain's lot in the dead of night on June 22, 1992, looked around for an attendant, saw no one, and started driving out.

He claims Ness appeared, attacked the car with a bat and then attacked him.

Ness told city police that Grant tried to assault him. Both men were arrested, but prosecutors opted not to pursue the cases.

"He didn't tell you that he tried to run over Ness and crash through the gate, did he?" said Joseph Wilkinson, owner of Fountain's, who disputes Grant's version.

Judge Mulvey rendered the $950,000 judgment after finding Fountain's in default for not showing up in court and presenting a defense.

Wilkinson disputes this: He's hired attorney Edwin Doernberger to appeal the judgment and handle the bankruptcy.

"Fountain's has never been given its day in court," Wilkinson said.

## Man, woman found dead in motel room

ENFIELD (AP) — A man and a woman were found shot in a motel room Sunday in what appeared to be a murder-suicide, police said.

The woman was dead when police were called to the scene about 10:30 a.m., Lt. Anjo Timmerman said. The man was taken to Bay State Medical Center in Springfield, Mass., where he was pronounced dead, police said.

Both victims appeared to be in their 50s. Their names were not being released until next of kin were notified.

# Colleges put heat on brightest students

## Yale, Princeton join Ivies in early-admissions policy

By Patrick Dilger
Register Staff

NEW HAVEN — The competition among selective colleges to secure the best students has stepped up a notch with the move by Yale and Princeton to a binding early-admissions policy.

The program, now in place at all but two Ivy League schools, requires any student who applies early — with applications usually due by Nov. 1 — to promise to attend that school if admitted. Students ... which regularly sends a crop of freshmen to the Ivies.

Yale has accepted 415 — or 38 percent — of the 1,095 early-decision applications it received. The school also saw its early applications drop off 30 percent, thanks to the change to a binding policy.

But admissions officials said they were happy with the new policy, because it ensured a crop of students who were making Yale their clear-cut first choice.

"Also, you're not going to have 100 kids who opt not to come, and that gives you more flexibility during the regular cycle (by opening up more slots)," said Richard Shaw, Yale's dean of undergraduate admissions.

... policies are putting additional pressure on high school students to pick their college in the first week of their senior year ... what should be a longer, more thoughtful process. Some students' views ... changed radically by spring ... sions notices are sent out ... apply through the regular process.

On the other hand, "If a student ... his homework and knows the ... can make life a lot easier ... sewn up early," Paton said.

Early-admissions programs ... created by hundreds of colleges ... 20 years to simplify the application ...

tor with unliquidated claim received discharge of all scheduled claims, tort claimant moved in state court to continue negligence action, debtors moved in bankruptcy court for enforcement of permanent injunction, and tort claimant cross-moved in bankruptcy court for modification of injunction pursuant to statute governing effect of discharge that protects debtor from any personal liability on debt. The Bankruptcy Court, Edward D. Hayes, J., denied tort claimant's cross motion and held that discharge injunction barred tort claimant from maintaining her negligence action. On appeal, the United States District Court for the Western District of New York, Michael A. Telesca, Chief Judge, vacated that order and held that discharge did not operate to enjoin tort claimant from resuming negligence suit, insofar as that action remained confined to obtaining judgment to be paid by debtors' liability insurer. The Court of Appeals, Oakes, Chief Judge, held that: (1) statute governing effect of discharge permits plaintiff to proceed against discharged debtor solely to recover from debtor's insurer; (2) tort claimant would be permitted to continue her suit against debtors who had received Chapter 7 discharge without being required to obtain modification of discharge injunction, but only to prove liability as prerequisite to recovery from debtors' liability insurer; and (3) neither res judicata nor collateral estoppel precluded resumption of tort claimant's suit after Chapter 7 debtors received discharge, even though tort claimant had failed to appeal bankruptcy court discharge order and bankruptcy court order denying tort claimant's erroneous postdischarge request for relief from stay.

Affirmed.

**1. Bankruptcy** ⇐2364, 2437

Tort claimant's motion after debtors received Chapter 7 discharge for relief from automatic stay was improper; discharge had extinguished stay and replaced it with permanent injunction protecting debtor from any personal liability on debt. Bankr.Code, 11 U.S.C.A. §§ 362(c)(2)(C), 524(a), 727.

**2. Bankruptcy** ⇐3411

Congress through statute providing for Chapter 7 discharge and through statute governing effect of discharge sought to free debtor of personal obligations while ensuring that no one else reaped similar benefit. Bankr.Code, 11 U.S.C.A. §§ 524, 727.

**3. Bankruptcy** ⇐3412

Senate report's statement, that provision that discharge of debt does not affect liability of any other entity on, or property of any other entity for, such debt provides that discharge of debtor does not affect codebtors or guarantors, represents nonexhaustive description of the most common types of third parties to which the provision applies and does not preclude application of that provision to third parties who might be indirectly liable to plaintiff, such as debtor's liability insurer. Bankr.Code, 11 U.S.C.A. § 524(e).

**4. Bankruptcy** ⇐3412

Statute governing effect of discharge permits plaintiff to proceed against discharged debtor solely to recover from debtor's insurer. Bankr.Code, 11 U.S.C.A. § 524.

**5. Bankruptcy** ⇐2364

Tort claimant would be permitted to continue her suit against debtors who had received Chapter 7 discharge without being required to obtain modification of discharge injunction, but only to prove liability as prerequisite to recovery from debtors' liability insurer; delay of approximately eight months between time that bankruptcy court issued discharge order and motion seeking modification of injunction should not forever bar tort claimant from continuing suit, where that delay had resulted in no prejudice to debtor or insurer. Bankr. Code, 11 U.S.C.A. § 524.

**6. Judgment** ⇐829(3)

Neither res judicata nor collateral estoppel precluded resumption of tort claimant's suit in state court after Chapter 7 debtors received discharge, even though tort claimant had failed to appeal bankruptcy court discharge order and bankruptcy

BankR Judge A Dabrowski can(not) exercise his power in contravention of the BankR code [25 F3d 1132] but in error [and corruption he has] 982 F3d 721 [2d cir 9