court order denying tort claimant's erroneous postdischarge request for relief from stay; scope of statute governing effect of discharge did not extend to suit against debtors maintained to recover from their insurer, and order denying relief from stay similarly involved no determination of right to continue tort claimant's suit. Bankr. Code, 11 U.S.C.A. § 524.

---

Francis L. Gorman, III, Rochester, N.Y. (Dennis R. McCoy, Saperston & Day, P.C., of counsel), for defendants-appellants.

John A. Bryant, Rochester, N.Y. (Faraci, Guadagnino, Lange & Johns, of counsel), for plaintiff-appellee.

Before OAKES, Chief Judge, NEWMAN and PRATT, Circuit Judges.

OAKES, Chief Judge:

William and Ann Welsh appeal the judgment of the United States District Court for the Western District of New York, Michael A. Telesca, *Chief Judge*, vacating an order of the bankruptcy court. The bankruptcy court, Edward D. Hayes, *Bankruptcy Court Judge*, enjoined appellee Maxine Green from prosecuting her tort claims against the Welshes on account of the discharge of indebtedness received by the Welshes under Chapter 7 of the Bankruptcy Act, 11 U.S.C. § 727 (1988). The district court, in vacating the bankruptcy court order, held that Green could resume her suit against the Welshes as long as it was directed only at obtaining a judgment to be paid by the Welshes' liability insurer. Because continuation of Green's suit is permitted by 11 U.S.C. § 524 (1988) and would not jeopardize the Welshes' ability to get a fresh start, we affirm.

## FACTS

In 1988, Maxine Green brought a negligence suit, individually and on behalf of her children, in New York State Supreme Court to recover for injuries resulting from a fire at the apartment she rented from William and Ann Welsh. The claims against the Welshes are covered by their liability insurance policy of $1 million. On January 26, 1990, the Welshes filed a petition under Chapter 7 which automatically stayed Green's state court action. *See* 11 U.S.C. § 362(a)(1) (1988).

The Welshes filed a schedule of liabilities with the bankruptcy court which listed Green as an unsecured creditor with an unliquidated claim. Green could have, but did not, attempt to obtain relief from the automatic stay to pursue her tort claims up to the liability policy limit. In May 1990, the bankruptcy court granted the Welshes a discharge of all scheduled claims, pursuant to 11 U.S.C. § 727 (1988).

[1] Green did not seek exclusion of her claim from the discharge. However, in August 1990, in an effort to resume her state court action, Green filed a motion in the bankruptcy court for relief from the automatic stay. The bankruptcy court denied the motion. As Green now concedes, her motion was improper because the discharge had extinguished the stay, see 11 U.S.C. § 362(c)(2)(C) (1988), and replaced it with a permanent injunction under 11 U.S.C. § 524(a) (1988).

Thereafter, in September 1990, Green moved in New York State Supreme Court to continue her negligence action. In response, the Welshes moved the bankruptcy court for enforcement of the permanent injunction. Green then cross-moved in bankruptcy court for modification of the § 524(a) injunction, if the court deemed it appropriate, to enable her to obtain a state court determination of the insurance company's liability. The bankruptcy judge denied Green's cross-motion, found that Green's tort claim had been discharged, and ordered that the § 524(a) injunction barred Green from maintaining her negligence action.

On appeal, the district court vacated the order of the bankruptcy court and held that, pursuant to § 524, the discharge under § 727 did not operate to enjoin Green from resuming her negligence suit, insofar as that action remained confined to obtaining a judgment to be paid by the Welsh's liability insurer.

DISCUSSION

A. The Scope of § 524

The Welshes first argue that the district court erroneously interpreted 11 U.S.C. § 524 to allow Green to continue her negligence suit in state court. The Welshes cite legislative history and some case law in support of their view that a discharge of a properly scheduled claim should bar resumption of a suit designed only to establish liability as a predicate to recovery from the debtor's insurer. However, the relevant provisions of § 524, the purpose of the Bankruptcy Code, and the vast majority of cases in the bankruptcy courts that have considered this issue show that the district court properly allowed Green to maintain her suit.

[2, 3] The discharge of a debt pursuant to § 727 triggers the operation of § 524, which protects the debtor from any personal liability on the debt. As the district court noted, the relevant sections provide, in part:

> A discharge in a case under this title—
> (1) voids any judgment at any time obtained, *to the extent that such judgment is a determination of the personal liability of the debtor* with respect to any debt discharged ...;
> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset *any such debt as a personal liability of the debtor*....

11 U.S.C. § 524(a) (1988) (emphasis added). The relief accorded the debtor by these provisions does not extend to other parties:

> Except as provided in subsection (a)(3) of this section, *discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt.*

11 U.S.C. § 524(e) (1988) (emphasis added). Together, the language of these sections reveals that Congress sought to free the debtor of his personal obligations while ensuring that no one else reaps a similar benefit. *See* 3 R. Babitt et al., *Collier on Bankruptcy* ¶ 524.01 at 524-16 (15th ed. 1991). The legislative history accords with this view. For example, the Senate Report explains that § 524 was designed "to insure that once a debt is discharged, the debtor will not be pressured in any way to repay it." S.Rep. No. 989, 95th Cong., 2d Sess. 80-81 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5866.[1] The protection afforded by the discharge injunction thus furthers one of the primary purposes of the Bankruptcy Code—that the debtor have the opportunity to make a "financial 'fresh start.'" *In Re Jet Florida Systems, Inc.*, 883 F.2d 970, 972 (11th Cir.1989) (per curiam) (citing Thomas H. Jackson, *The Fresh-Start Policy in Bankruptcy Law*, 98 Harv.L.Rev. 1393, 1396-97 (1985)).

[4, 5] Numerous courts, confronted with a tort claimant who seeks to proceed against a discharged debtor only for the purpose of recovering against an insurer, have relied on §§ 524(a) and 524(e) and the fresh start policy in concluding that the discharge injunction does not bar such a suit. *See, e.g. In re Jet Florida Systems, Inc.*, 883 F.2d 970, 976 (11th Cir.1989) (section 524(e) permits a plaintiff to proceed against the debtor to establish liability as a prerequisite to recover from an insurer); *In re Greenway*, 126 B.R. 253, 255 (Bankr. E.D.Tex.1991) (discharge order does not bar continuation of state court action to determine liability of debtor solely as a prerequisite to recovery from debtor's insurance carrier); *In re Peterson*, 118 B.R. 801, 804 (Bankr.D.N.M.1990) (injunction provided by § 524 does not bar FDIC from establishing the liability of the debtor so as to proceed against bank employee insurer);

Indicia Notice

1. The Welshes argue that the Senate Report supports their view that § 524(e) does not permit Green to resume her suit, because it applies only to entities who are independently liable to the plaintiff. The Senate Report provides that "[s]ubsection (d) [sic] provides the discharge of the debtor does not affect co-debtors or guarantors." S.Rep. No. 989 at 81, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5867. We believe, however, that this wording represents a non-exhaustive description of the most common types of third parties to which § 524(e) applies and it in no way precludes the application of the section to third parties who may be indirectly liable to a plaintiff, such as the debtor's liability insurer.

Case 3:02-cv-02212-SRU Document 24-2 Filed 12/01/2006 Page 3 of 15



*In re Traylor*, 94 B.R. 292, 293 (Bankr. E.D.N.Y.1989) (discharge does not release debtor's insurer from liability); *In re Lembke*, 93 B.R. 701, 702–03 (Bankr. D.N.D.1988) (section 524 injunction permits suit to recover from debtor's insurer); *In re White*, 73 B.R. 983, 984–86 (Bankr. D.D.C.1987) (injunction issued pursuant to debtor's discharge does not bar a lawsuit against the debtor that will affect only the assets of the debtor's insurer); *In re Mann*, 58 B.R. 953, 959 (Bankr.W.D.Va. 1986) (section 524 does not prohibit tort claimant from maintaining a pending suit against discharged debtor to effectuate recovery under claimant's uninsured motorist coverage). Some courts have reached the same result by modifying the injunction to permit the tort suit to continue. *See, e.g. In re Walker*, 927 F.2d 1138, 1142–44 (10th Cir.1991) (section 524(e) permits a creditor to bring a direct suit against the debtor where establishment of the debtor's liability is a prerequisite to recovery from a state fund); *In re Dorner*, 125 B.R. 198, 202 (Bankr.N.D.Ohio 1991) (modification of section 524 injunction appropriate to enable defendant in tort action to establish debtor's liability for purposes of setoff and apportionment); *In re McGraw*, 18 B.R. 140, 143 (Bankr.W.D.Wis.1982) (section 524 injunction can be modified to permit continuation of suit provided that creditors are enjoined from collecting any judgment from debtor). Yet other courts have applied similar reasoning in deciding to grant a tort claimant relief from the automatic stay. *See, e.g. In re Fernstrom Storage and Van Co.*, 938 F.2d 731 (7th Cir.1991); *Elliott v. Hardison*, 25 B.R. 305 (E.D.Va. 1982); *In re Honosky*, 6 B.R. 667 (Bankr. S.D.W.Va.1980).

One of these cases, *In re Jet*, merits further discussion because, even though the debtor sought protection under Chapter 11, the court's analysis is both persuasive and highly applicable to the resolution of this appeal.[2] A plaintiff who had sued the debtor for defamation failed to file a proof of claim with respect to his action prior to the bar date for filing proofs of claims. 883 F.2d at 972. The bankruptcy court subsequently issued a permanent injunction under § 524 and barred the plaintiff from continuing his suit. *Id.* On appeal, the district court found that the statutory language and purpose of the § 524(a) injunction, aimed at protecting the debtor, did not preclude a suit tailored solely to determining the debtor's liability as a precondition for recovery against the debtor's liability insurer. *Id.* at 973. The court then held that § 524(e)'s broadly worded limitation on the effect of discharge permitted the plaintiff to proceed against the debtor with such a suit. *Id.* at 976. In reaching this conclusion, the court emphasized that neither the " 'fresh-start' policy" nor § 524 was designed to immunize "third parties such as insurers who may be liable on behalf of the debtor," and the insurer should not gain a benefit that had not figured in the calculation of the premium for the policy. *Id.* at 975 (footnote omitted). Finally, the court found it highly unlikely that the debtor would incur any expenses in defending the suit because the discharge left it free to default, thus compelling the insurer to pay the costs of litigation. *Id.* at 976. *In re Jet* and a host of other cases stand squarely in opposition to the Welshes' view of the scope of a section 524 injunction.

Appellants rely on *In re White Motor Credit*, 761 F.2d 270 (6th Cir.1985), where the court barred continuation of personal injury claims that would have been paid by the debtor's insurers. We believe, however, that our preceding discussion shows that the outcome mandated by *White Motor Credit* is supported by neither the text nor the intent of § 524. Moreover, as the court in *In re Jet* implied in rejecting the Sixth Circuit's view, the persuasiveness of *White Motor Credit* is undermined by the court's failure to support its decision with any analysis. *See In re Jet*, 883 F.2d at 973–74. The *White Motor Credit* court, without any countervailing purpose, de-

2. Note that the *In re Jet* court affirmed the judgment of the district court for the reasons set forth in the district court's opinion. Accordingly, the following references are to the district court's opinion as incorporated by the appellate court.

Case 3:02-cv-02212-SRU Document 24-2 Filed 12/01/2006 Page 4 of 15



prived the personal injury plaintiffs of a significant right by denying them the opportunity to litigate the issue of liability. *See In re Mann*, 58 B.R. at 959. For these reasons, we decline to follow its holding.

The Welshes also contend that the case of *Freed v. Braniff Airways, Inc.*, 119 F.R.D. 10 (S.D.N.Y.1987), compels reversal of the district court. In *Freed*, the plaintiff brought tort claims in district court against the debtor. *Id.* In an earlier Chapter 11 proceeding, however, a bankruptcy court in Texas had specifically barred all of the plaintiff's claims against the debtor. *In re Braniff Airways, Inc.*, 1986 WL 20577 (Bankr.N.D.Tex.1986). The district court held that the bankruptcy court's holding collaterally estopped the plaintiff's claims. *Freed*, 119 F.R.D. at 10–11. The district court never reached the merits of whether 11 U.S.C. § 524 barred the plaintiff's claims against the debtor's insurer. Further, the case differs from the facts at issue here because apparently the *Freed* plaintiff never appealed the determination of the Texas bankruptcy court, deciding instead to assert her claims in district court despite the earlier bankruptcy proceeding. In this case, Green appealed the bankruptcy court's order, denying her cross-motion for modification of the § 524 injunction, to the district court. Thus, *Freed* does not provide compelling authority for barring Green from continuing her suit.

Thus, notwithstanding *White Motor Credit* and *Freed*, we believe that § 524 permits a plaintiff to proceed against a discharged debtor solely to recover from the debtor's insurer. Applied here, this principle permits Green to continue her suit against the Welshes to establish liability as a precondition to recovery from the Welshes liability insurer.

Green did miss several opportunities to obtain the relief she ultimately sought through the motion for modification of the § 524 injunction that forms the basis of this appeal. Prior to discharge, Green could have sought to continue her suit by moving for relief from the automatic stay. Following discharge, Green could have appealed the discharge order, instead of erroneously moving for relief from the automatic stay. But we do not believe the delay of approximately eight months between the time the bankruptcy court issued the discharge order and her motion at issue here should forever bar her from continuing her suit, because this delay has resulted in no prejudice to the insurer or the debtor. *See In re Walker*, 927 F.2d 1138, 1143 (10th Cir.1991) (plaintiff may sue debtor solely to establish liability despite one-year delay in seeking relief from discharge injunction where, *inter alia*, debtor was not prejudiced by the delay); *see also In re Mann*, 58 B.R. at 955) (bankruptcy court permitted plaintiff to proceed against debtor to recover from debtor's insurer even though plaintiff moved for such relief ten months after debtor was granted a discharge). Therefore, we reject the Welshes' first claim.

B. Appellants' Remaining Claims

[6] The Welshes' remaining claims do not require extended discussion. They argue that the doctrines of *res judicata* and collateral estoppel require us to reverse the district court and bar resumption of Green's negligence action. They base this argument on Green's failure to appeal two orders of the bankruptcy court: the discharge order of May 1990 and the order of September 1990 denying Green relief from the automatic stay. The discharge order triggered the operation of section 524, which relieved the Welshes of personal liability on Green's tort claim. However, because the scope of section 524 does not extend to Green's suit against the Welshes to recover from their insurer, the discharge order never determined Green's ability to continue that suit. And the order denying Green relief from the automatic stay similarly involved no determination of Green's right to continue her suit, because at the time Green sought relief there existed no automatic stay from which relief could be granted. Thus, these claims must fail.

Finally, the Welshes argue that the bankruptcy court's denial of Green's cross-motion for modification of the discharge injunction was not an abuse of discretion, and thus the district court erred in vacating

Case 3:02-cv-02212-SRU Document 24-2 Filed 12/01/2006 Page 5 of 15



the bankruptcy court's order. However, as our discussion of the scope of the section 524 injunction indicates, we believe that the bankruptcy court misinterpreted the effect of discharge and the district court properly vacated the bankruptcy court's order. Accordingly, this claim is meritless.

IV

In sum, we find that the discharge injunction under §§ 524(a) and 524(e) permits Green to continue her suit against the Welshes, without requiring her to obtain a modification of the injunction, but only to prove liability as a prerequisite to recovery from the Welsh's liability insurer. Green remains barred from proceeding against the Welshes personally to collect any judgment awarded as a result of her suit.

Affirmed.




**James W. MENSH, Bennie P. Mensh, Plaintiffs–Appellees,**

v.

**R.A. DYER, M.G. Tsoleas, Jr., C.M. Chidester, Jr., Defendants–Appellants,**

**and**

**Ted Banholzer, Gerald C. Fayed, Defendants.**

**No. 90–2913.**

United States Court of Appeals, Fourth Circuit.

Argued May 6, 1991.

Decided Nov. 21, 1991.

Amended by Order Jan. 13, 1992.

Homeowner who was roused from sleep and detained by arrest team that had warrant for homeowner's son brought civil rights action against state police officers and one FBI agent. The United States District Court for the Western District of Virginia, Jackson L. Kiser, J., denied state officers' motion for summary judgment and state appealed. The Court of Appeals, Staker, District Judge, sitting by designation, held that officers were entitled to qualified immunity on claims of lack of probable cause, failure to knock and announce, and use of excessive force.

Reversed.

Frank A. Kaufman, Senior District Judge, sitting by designation, filed dissenting opinion.

**1. Civil Rights ⚿211**

"Qualified immunity" in civil rights action is entitlement not to stand trial or face other burdens of litigation and is essentially irreclaimable once cause is allowed to go to trial.

See publication Words and Phrases for other judicial constructions and definitions.

**2. Federal Courts ⚿595**

Denial of motion for summary judgment based on claim of qualified immunity is a "final decision" for purposes of appellate review.

See publication Words and Phrases for other judicial constructions and definitions.

**3. Civil Rights ⚿214(6)**

State police officers are entitled to summary judgment on ground of qualified immunity in civil rights action if they can establish that reasonable officers could have believed that their actions were lawful in light of both clearly established law and information officers possessed at time of acts in question.

**4. Civil Rights ⚿214(6)**

Court determining whether police officers are entitled to qualified immunity in civil rights action inquires into objective legal reasonableness of officers' actions, not into officers' subjective beliefs.

**5. Arrest ⚿63.4(1)**

Arrest based on probable cause does not violate Fourth Amendment even if

APPENDIX—Continued

*re Frigitemp Corp.),* 8 B.R. 284, 287–88 (S.D.N.Y.1981). In such a case, the section 524(a) injunction will act to shield the debtor from such creditors.

> The section 524(a) injunction was designed primarily to protect the debtor and the bankruptcy estate. However, a discharge will not act to enjoin a creditor from taking action against another who also might be liable to the creditor.
>
> Except as provided in subsection (a)(3) of this section, discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt.

11 U.S.C. § 524(e). For example, a surety who is secondarily liable to the obligee, is not shielded by the obligor's bankruptcy or section 524 injunction. *See Bowers v. American Surety Co.,* 30 F.2d 244 (2d Cir.), *cert. denied,* 279 U.S. 865 [, 49 S.Ct. 480, 73 L.Ed. 1003] (1929); *see also Underhill v. Royal,* 769 F.2d 1426, 1432 (9th Cir.1985).

B. *Obligation of an Insurer*

In the case at bar, Appellant Owaski concedes that he may not proceed against the assets of the bankruptcy estate. However, Owaski maintains that he may proceed against the debtor to establish the debtor's liability in order to recover from the debtor's insurer.

To determine whether Owaski should be permitted to proceed with his defamation claim, we begin with an examination of section 524 of the Bankruptcy Code. Section 524(a) explicitly renders judgments void only for "the personal liability of the debtor." 11 U.S.C. § 524(a). Accordingly, the statutory language, on its face, does not preclude the determination of the debtor's liability upon which the damages would be owed by another party, such as the debtor's liability insurer.

Moreover, section 524(e) permits a creditor to seek recovery from "any other entity" who may be liable on behalf of the debtor. 11 U.S.C. § 524(e). In discussing the scope of section 524(a) and (e), *Collier's* makes this observation:

> the provisions of 524(a) apply only with respect to the *personal liability* of the debtor. When it is necessary to commence or continue a suit against a debtor in order, for example, *to establish liability of another,* perhaps a surety, such suit would not be barred. Section 524(e) was intended for the benefit of the debtor but was not meant to affect the liability of third parties or *to prevent establishing such liability* through whatever means required.

3 R. Babitt, A. Herzog, R. Mabey, H. Novikoff, & M. Sheinfeld, *Collier on Bankruptcy* ¶ 524.01 at 524–16 (15th ed.1987) (emphasis added). Certainly, the obligation of an insurer can be viewed as such a secondary liability under the provisions of section 524(e).

Despite statutory language that would suggest otherwise, Appellee Jet Florida contends that because Owaski failed to file any notice of claim in the earlier bankruptcy proceedings, he may not proceed with his defamation action. In support of this position, Jet Florida relies exclusively on *Citibank, N.A. v. White Motor Corp. (In re White Motor Credit),* 761 F.2d 270 (6th Cir.1985). In *White Motor,* the Sixth Circuit had before it an issue similar to the one before this Court. There, 160 individual tort plaintiffs sought to litigate for judgment against the debtor and then to collect the judgment from the debtor's insurers. *Id.* at 274. The court in *White Motor* held that all pre-petition and post-petition claims that had not been filed with the bankruptcy court were barred. *Id.* at 274–75.

We are not prepared to follow the conclusion reached in *White Motor* regarding the preclusive effect of section 524. Although the Sixth Circuit thoroughly canvassed the abstention issues under the Bankruptcy Code, its decision provides only a brief discussion as to the scope and meaning of section 524. The one paragraph discussion in *White Motor* regarding this issue first states that the district court's order allowed personal injury claims to continue, and then offers the naked conclusion that the claims were barred if they had not been filed in time. *Id.* at 274–75. The brief treatment given to the issue may have

APPENDIX—Continued

stemmed from confusion over the district court's order. The Sixth Circuit candidly admitted that they were "unable to determine precisely what the District Court had held on this issue." *Id.* at 274 n. 3. *White Motor* provided no commentary regarding the statutory language of section 524, nor did it offer any rationale of any kind for its holding. Moreover, the conclusion stated in *White Motor* regarding the preclusive effect of section 524 contravenes the holdings and rationale of a line of cases, which this Court will discuss below, involving the continuation of tort actions against a debtor for the purpose of establishing insurer liability.

We believe that the plain language of section 524, as well as an examination of a relevant line of cases, compel us to reject the application of *White Motor* to the facts and circumstances of this case. To begin, in the case of *Wimmer v. Mann (In re Mann)*, 58 B.R. 953, 956 (Bankr.W.D.Va. 1986), the court determined that the intent of the section 524(a) injunction is to prohibit the collecting of a debt as a personal liability of the debtor. *Id.* at 958. There, as here, the plaintiff had not filed a claim prior to the debtor's discharge of debt. However, the court reasoned that the goals of section 524(a) would not be advanced by preventing a plaintiff from maintaining an action against the debtor in order to establish the debtor's liability when that was a prerequisite to recovery from the insurer. *Id.* at 958; *see also Rowe v. Ford Motor Co.*, 34 B.R. 680 (M.D.Ala.1983); *Elliot [Elliott] v. Hardison*, 25 B.R. 305 (E.D.Va. 1982); *Wilkinson v. Vigilant Insurance Co.*, [236 Ga. 456,] 224 S.E.2d 167 (1976); *Johnson v. Bondurant*, [187 Kan. 637,] 359 P.2d 861 (1961); *Miller v. Collins*, [328 Mo. 313,] 40 S.W.2d 1062 (1931).

According to *Mann*, when an insurer is liable for the debtor's torts, this liability is " 'personal' within the meaning of section 524(a)(2) only to the extent necessary to sustain recovery against the insurer, not the debtor-insured." *Id.* at 957. *See also In re Honosky*, 6 B.R. 667, 670 [Bkrtcy.] (S.D.W.Va.1980). The debtor is not prejudiced by exposure to the liability claim because "[t]he Debtor and his property are not subject to any risk and maintenance of the suit does not frustrate the policy of the Bankruptcy Code in giving the Debtor a fresh start in his economic life." *In re Mann*, 58 B.R. at 958. The *Mann* court concluded that the pending tort action could proceed in order to permit the plaintiff in that action to effect recovery against the insurance company.

The *Mann* decision is far from alone in enabling tort claims to continue against a debtor for the purpose of insurance recovery. The district court in Montana in reviewing a case similar to *Mann* concluded that:

NOTICE

> The judgment of the state court was, as a matter of law, null and void as to [the debtor], and the order of discharge of June 7, 1977, and the subsequent order of September 23, 1977, were correct in declaring and in enjoining any action under it as to [the debtor]. If, however, as a matter of state law, the judgment in the state court has the effect of establishing some fact or fixing some liability as to the insurance company, the state courts are free to give that judgment its proper effect to [sic] long as they do not in any way involve [the debtor] in what is done.

*In re Bracy*, 449 F.Supp. 70, 71 (D.Mont. 1978).

In yet another case similar to *Mann* and the case at bar, the tort victim sought to modify the injunction of section 524 for the sole purpose of seeking a judgment not against the debtor, which was her former employer, but against the debtor's insurance company. *In re McGraw*, 18 B.R. 140 (Bankr.W.D.Wis.1982). The bankruptcy court concluded that since neither the debtor nor his property was in any jeopardy of personal liability, the injunction of section 524 could be modified and the suit could continue with the debtor as defendant for the limited purpose of determining liability. *Id.* at 143.

In *West v. White (In re White)*, 73 B.R. 983 (Bankr.D.Col.1987), a plaintiff had filed a lawsuit for personal injuries against de-

APPENDIX—Continued

fendant who had filed for bankruptcy and did not file a claim before the defendant-debtor's discharge. The defendant-debtor argued that the section 524 injunction barred plaintiff from continuing her claim. *Id.* at 984. The bankruptcy court, relying upon section 524(e), disagreed "to the extent that that lawsuit will affect only the assets and liability of the debtor's insurer, and not the debtor personally." *Id.* at 985. *See also In re Honosky,* 6 B.R. 667 (Bankr. S.D.W.Va.1980) (Plaintiff could proceed to suit to extent of the debtor's insurance coverage); *Elliott v. Hardison,* 25 B.R. 305–06 (E.D.Va.1982) (relief from stay appropriate given that any resulting judgment from the civil action could not be enforced against the debtor or his bankruptcy estate); *In re Glen-Bern Industries, Inc.,* 6 C.B.C. 100, 102 (Bankr.D. Mass.1975) (although decided under § 16 Bankruptcy Act of 1898, the court reasoned that a discharge is personal to the debtor and not to accrue to the benefit of third parties who may have liability based on the bankrupt's liability); *Rowe v. Ford Motor Co.,* 34 B.R. 680 (M.D.Ala.1983).

Appellees have asserted that many of the cases cited above—particularly those involving uninsured motorists—are distinguishable from the case at bar because those cases involved a plaintiff seeking to determine liability of the debtor in order to recover under their own insurance policies and not the insurance policies of the debtors. We are unpersuaded by Appellee's attempt at distinguishing the cases. The analysis provided by the available case law does not hinge upon whose insurer is liable, but rather upon the condition that the debtor not be personally liable in a way that would interfere with the debtor's fresh start in economic life. The mere fact that it would be the Appellee's insurer who is potentially liable for the defamation tort is of no consequence for determining the preclusive effect of section 524. In addition, Appellees ignore two cases. In *In re McGraw,* 18 B.R. 140 (Bankr.W.D.Wis. 1982), the plaintiff in a negligence suit was permitted to seek recovery from her employer's liability insurer. In *In re White,* 73 B.R. 983 (Bankr.D.Col.1987), the plaintiff was permitted to proceed against a debtor to seek recovery from the defendant's liability insurer.

Appellees also maintain that Appellee's insurer will be prejudiced by the continuation of Appellant's defamation suit. The reported cases, however, underscore that the purpose of section 524 of the *Bankruptcy Code* is to protect the debtor and not to shield third parties such as insurers who may be liable on behalf of the debtor.[1] The cases we have cited take into account that an insurer may be liable if the plaintiff prevails in the continuing tort action. Therefore, the insurer is not considered to be "prejudiced" under section 524 when the permanent injunction is modified to permit a pending action to continue for the purpose of seeking recovery from the debtor's insurer, because the insurer's obligation remains commensurate with the underlying insurance contract. The "fresh-start" policy is not intended to provide a method by which an insurer can escape its obligations based simply on the financial misfortunes of the insured.

Far from holding that insurers should be protected from liability, one "court reasoned that the insurance company should not be entitled to gain a benefit that was not intended or in any way computed within the rate charged for its policy." *In re Mann,* 58 B.R. 953, 957 (Bankr.W.D.Va. 1986) (citing *In re Glen-Bern Industries, Inc.,* 6 C.B.C. 100, 103 (Bankr.D.Mass. 1975)). *See also Johnson v. Bondurant,*

1. One court noted the following in determining the liability of an insurance company for bankruptcy purposes:

> It is unnecessary to determine specifically that the insurer is a co-debtor, or a guarantor, or in any manner a surety for the assured, but it is clear that the insurer falls within one of these classifications.... Consequently the liability of the [insurer] is not altered by the discharge of the bankrupt.

*Wilkinson v. Vigilant Insurance Co.,* [236 Ga. 456,] 224 S.E.2d 167, 168 (1976) (*quoting Miller,* 40 S.W.2d at 1065) (referring to predecessor to § 524(e), which was not as broad as § 524(e). *West v. White (In re White),* 73 B.R. 983, 985 (Bankr.D.Col.1987)).

APPENDIX—Continued

187 Kan. 637, 359 P.2d 861 (1961) (liability of an insurer is not altered by the discharge of a bankrupt). The *Mann* court wrote that "[w]ere we to not permit the state court action to proceed, the insurance company would in effect escape potential liability and be unjustly enriched." *In re Mann*, 58 B.R. at 958. Even under section 16 of the former Bankruptcy Act which had more limited language than section 524(e), the court held in *In re Bracy*, 449 F.Supp. 70, 71 (D.Mont.1978), that:

> if an insurance company is as a matter of state law liable to a plaintiff in a personal injury action, subsequent discharge of the assured in bankruptcy does not alter the obligation of the insurance company. It seems clear that it is the policy of the law to discharge the bankrupt but not to release from liability those who are liable with him.

The same result must follow under the broader language of Section 524(e). *In re White*, 73 B.R. 983, 985 (Bankr.D.Col.1987)

We are, however, concerned by the prospect that reversing the decision of the bankruptcy court in this case would frustrate the fresh-start policy embodied in the Code in one way—by requiring the bankrupt to spend sums in defending this lawsuit. We are cognizant that in actions such as these, the cost of litigation can sometimes surpass the actual amount of liability. Therefore, to allow suits of this nature to go forward could possibly have the effect of draining funds that would more properly be used in the revitalization of the reorganized corporation.

Nonetheless, this consideration alone does not require us to affirm the court below for two main reasons. First, we can determine no effective means of determining at this stage whether the bankrupt *or* the insurance company will pay the cost of the litigation. To have our ruling premised on that determination would provide an incentive for the debtor to claim to assume that burden. If that simple fact barred the plaintiff from going forward on his claim, there would exist no adversarial relationship between the bankrupt and insurer so that we could actually resolve this crucial question, because both of those parties would have an obvious interest in demonstrating that the debtor was liable for litigation costs.

Second, the practical and economic realities compel the *insurance company* to defend the underlying action. *See Matter of Holtkamp*, 669 F.2d 505, 508–09 (7th Cir. 1982); *In re White*, 73 B.R. at 985. The insurance company may be responsible pursuant to a contract with the bankrupt, in which case it is in their direct interest to defend the action. On the other hand, if there is a dispute between the bankrupt and the insurer as to the applicability of coverage, it remains in the interest of the insurer to defend the suit. In a situation such as the one at bar, the debtor would be free to default because the Plaintiff cannot recover directly from the bankrupt estate. In that scenario, we recognize that the insurance company would be compelled to litigate its responsibility under the insurance contract in order to avoid payment. It seems clear that the relationship between the parties in this action—Plaintiff, bankrupt, and insurer—virtually requires that Air Florida will be represented in the defamation action with no cost to it. In short, we find that the possibility that the debtor will be responsible to pay any amount associated with defending this action is so remote that the fresh-start policy is simply not defeated.

## III. CONCLUSION

We find that section 524(a) prohibits a plaintiff from proceeding against a debtor who has received a discharge of debt in order to recover from the bankruptcy estate. However, pursuant to section 524(e), a plaintiff may proceed against the debtor simply in order to establish liability as a prerequisite to recover from another, an insurer, who may be liable. Accordingly, it is hereby

ORDERED AND ADJUDGED that the order of the bankruptcy court denying Appellants motion for relief from the permanent injunction is REVERSED and this

(b) A home warranty contract or home warranty service agreement as defined in subsection (a) of this section shall constitute a contract of insurance within the meaning of section 38a-319.

(1958 Rev., § 38-31a; 1980, P.A. 80-228, §§ 1, 2; 1981, P.A. 81-314, § 2, eff. May 2, 1982; 1997, P.A. 97-48, § 1.)

### Historical and Statutory Notes

**Transfer of Section**

This section, formerly set out as C.G.S.A. § 38-31a, was transferred to C.G.S.A. § 38a-320 in Gen.St., Rev. to 1991.

### Library References

**American Digest System**

Insurance ⟹1101.

**WESTLAW Research**

WESTLAW Topic No. 217.

**Encyclopedias**

C.J.S. Insurance § 2.

Words and Phrases (Perm.Ed.)

### WESTLAW Electronic Research

See WESTLAW Electronic Research Guide following the Preface.

### Notes of Decisions

Home warranty or service agreement construed 1

---

**1. Home warranty or service agreement construed**

The statute subjecting "home warranty contracts" and "home warranty service agreements" to the insurance laws does not apply to the "H.E.L.P." program. 1996 Op.Atty.Gen. No. 13.

## § 38a-321. Liability of insurer under liability policy

Each insurance company which issues a policy to any person, firm or corporation, insuring against loss or damage on account of the bodily injury or death by accident of any person, or damage to the property of any person, for which loss or damage such person, firm or corporation is legally responsible, shall, whenever a loss occurs under such policy, become absolutely liable, and the payment of such loss shall not depend upon the satisfaction by the assured of a final judgment against him for loss, damage or death occasioned by such casualty. No such contract of insurance shall be cancelled or annulled by any agreement between the insurance company and the assured after the assured has become responsible for such loss or damage, and any such cancellation or annulment shall be void. Upon the recovery of a final judgment against any person, firm or corporation by any person, including administrators or executors, for loss or damage on account of bodily injury or death or damage to property, if the defendant in such action was insured against such loss or damage at the time when the right of action arose and if such judgment is not satisfied within thirty days after the date when it was rendered, such judgment creditor shall be subrogated to all the rights of the defendant and shall have a right of action against the insurer to the same extent that the defendant in such action could have enforced his claim against such insurer had such defendant paid such judgment.





(1949 Rev., § 6191; 1958 Rev., § 38-175.)

### Historical and Statutory Notes

**Transfer of Section**

This section, formerly set out as C.G.S.A. § 38-175, was transferred to C.G.S.A. § 38a-321 in Gen.St., Rev. to 1991.

**Derivation:**

1919, P.A. ch. 331.

1930 Rev., § 4231.

### Law Review and Journal Commentaries

Accident liability reconsidered: The impact of liability insurance. Fleming James, Jr., 57 Yale L.J. 549 (1948).

Arbitration of automobile accident cases. Gerald Aksen, 1 Conn.L.Rev. 70 (1968).

Constitutionality of direct action (against liability insurers) laws in a multistate context: governmental interest and the conflict of laws. 64 Yale L.J. 940 (1955).

Developments in arbitration law 1986. Charles A. Yuen, 61 Conn.B.J. 261 (1987).

Extent of subrogee's remedy. 35 Yale L.J. 484 (1926); 35 Yale L.J. 618 (1926).

Insurance, permissive joinder as a substitute for excluding evidence that defendant is insured. 59 Yale L.J. 1160 (1950).

Insurer's refusal to settle—A proposal for liability above policy limits. 60 Yale L.J. 1037 (1951).

Liability of insurance companies to settle. 40 Yale L.J. 979 (1931).

Liability of insurer for failure to settle. Raymond E. Baldwin, 3 Conn.B.J. 114 (1929).

Mention of insurance during trial. Charles N. Segal, 31 Conn.B.J. 94 (1957).

No Fault Systems. Josephine Y. King, 4 Pace L.Rev. 297 (1984).

Role of corporate counsel in product liability prevention. Michael J. Coleman, 47 Conn.B.J. 63 (1973).

Survey of Connecticut tort law: 1983. Albert Zakarian and Barry D. Guliano, 58 Conn.B.J. 91 (1984).

### Library References

**Connecticut Practice**

Kaye and Effron, 1 Connecticut Practice § 390.

Moller and Horton, 1 Connecticut Practice § 390.

### WESTLAW Electronic Research

See WESTLAW Electronic Research Guide following the Preface.

### Notes of Decisions

Application of section 6
Bankruptcy or insolvency, subrogation 14
Burden of proof 25
Cancellation or annulment 8
Construction with other laws 1
Damage to property 7
Declaratory judgment 28
Defenses 20-24
In general 20
Exclusionary clauses 23
Failure to comply 21
Payment 22
Waiver 24

AND ADDRESS OF AGENCY (203) 787-6781

(203) 787-6781
THOMPSON & PECK INC
321 WHITNEY AVE
NEW HAVEN CT 06511

AGENCY CODE

INSURANCE COMPANY
RELIANCE INSURANCE COMPANY

Attn: Connie Ames

NAME / AND MAILING ADDRESS OF INSURED
FOUNTAINS GARAGE INC
117 STILES ST
NEW HAVEN CT 06512-1712

POLICY NUMBER SG2520375 POLICY TYPE GARA

POLICY PERIOD (INCEPTION) April 25, 1996 TO (EXPIRATION) April 25, 199[illegible]

Judicial Notice Conspiratorial Agreement proved *

*Change effective April 25, 1996 Fr[illegible]

Law of Case April 4 1998 Prove Fraud Bankr[illegible]
Premised on A.R. Scott Plea Agreement *

1. GARAGE LIABILITY
1. Mortgagee
NEIL WILKINSON

Per our conversation yesterday, please add the City of New Haven ATIMA, 165 Church St New Haven CT 06510 as additional insured to the above policy retroactive to 4/25/96. This is required to bring the insured into compliance with their annual towing permit with the City of New Haven.

You had indicated that this could be done as it is a common contract requirement. Please also see that this additional insured clause is contained in the upcoming renewal policy.

*Judicial Notice City of N.H. move Clearly calculated Fraudulent Conveyance *

Thank you.

D.T.P.A. Intended to Protect Against Nondisclosure of Material fact Cited 666 S.W.2d 554] Judicial Notice [Treble damages CGS [14-295]
Pervasive Illegal Conduct file for Enhancement of damages
U.D.A.P. Cited 73 P.S. 201-2(4) A violation of state of conn criminal code prove
* Fraudulent Conveyance Bankr Fraud 18 USC 151-7 Et Seq
38-321 liability of Insurer Mitt Chodos Agent of Record Progressive Ins. Co.
* No Cancellation] 950,000.00] Judgment obtained Against fountains garage
38A-175(f) Failure to Properly Cancel Keeps policy of Ins. In force] by law
ALR Insurer will Not be Allowed to defeat Purpose for which Progressive Policy was Procured
* ALR 1041 1070] the Court Ruled In favor of Ag[illegible] then Bankr Fraud carried on
Safeguard prevented cancellation of Insurance State Law Violated
CGS 1930] 423] CGSA 51-199] 82-1-82-7] Rule 23 dis Positive of *
* Bankr Courts And Blue Rulings]

Mortgagee
NEIL WILKINSON

(Authorized Signature)
Ann Archer CL (A)

Aiding And Abetting to misrepresentation]
Court Allowed Suit to go Foward Against Ins Co. 4 BR 250] 73 BR 983] 883 F.2d 910]
* 01 CV 935 (AWT) Hartford to be Paid In going against Ins Ink[illegible] ***
Judicial Notice
Out Right Law Breaking bi City of New Haven Ethical lainty the same

A Renewal does Not Occur 309 BR 520
Judicial Notice *

performed in a prescribed manner without the exercise of judgment or discretion. There are, however, three exceptions under which **liability** may be found even though the duty is discretionary. Our Supreme Court in Evon, supra, at 505 said:

> "The immunity from **liability** for the performance of discretionary acts by a **municipal** employee is subject to three exceptions or circumstances under which **liability** may attach even though the act was discretionary: first, where the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm; second, where a statute specifically provides for a cause of action against a municipality or **municipal** official

Page 127

> for failure to enforce certain laws; and third, where the alleged acts involve malice, wantonness or intent to injure, rather than negligence."

Another exception to governmental immunity is embodied in Connecticut General Statutes 52-557n (a) (1) (A) and (B) which provides that a municipality is liable for "[t]he negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties (B) negligence in the performance of functions from which the political subdivision derives a special corporate profit or pecuniary benefit." However, pursuant to Connecticut General Statutes 52-557n (a) (2) (B), a municipality is not liable for "negligent acts or omissions which require the exercise of judgment or discretion. . . ." (Emphasis added). Furthermore, pursuant to Connecticut General Statutes 52-557n (b) (7), a municipality is not liable for damages to person or property resulting from "the issuance, denial, suspension or revocation of, or failure or refusal to issue, deny, suspend or revoke any permit, license, certificate, approval, order or similar authorization, when such authority is a discretionary function by law" unless there is a reckless disregard for health or safety. (Emphasis added).

In Gauvin v. New Haven, 187 Conn. 180, 186 (1982), the court noted that "whether the acts complained of . . . were governmental or ministerial is a factual question which depends upon the nature of the act complained of." In several cases since Gauvin, however, the court has decided this issue as a matter of law. See e.g., Evon v. Andrews, 211 Conn. 501, 507 (1989) (court decided as a matter of law that acts required exercise of discretion and were not ministerial); Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 170 (1988) (court has approved the practice of deciding issue of governmental immunity as a matter of law) Letowt v. City of Norwalk, 5 CSCR 12, 13 (November 8, 1989, Lewis, J.) (as a matter of law, officer's operation of a police car was ministerial).

The plaintiff has [redacted] allege [redacted] facts which bring this case within the purview of the exceptions outlined in Evon, supra.

[Handwritten annotations: "Evidentiary Issue found to be Genuine material fact) Exist"; "(where Plaintiff does Recognize) A State Recognizable Equitable obligation) to pay"; "Substantive Law And Principle Evidence (29-109) About License"; "A cause sec 42A.3.420) of Registered Public obligation"; "Negligence And Breach of statutory duty 29-1 (38-342) 38A-815)"; "(sec 42-110.1) this section is sufficient Instigation Prosecut"; "Liability is found to be Genuine"; "(As found by court As Per Hon. Judg L.C. Gray) (1996)"; "As Per L.C. Gray (1996) the court found Policy Inconsistent with Requirements set forth by City of New Haven Pursuant 38A-250 Complete operational Liability by Employer Liability Act)"; "(to Public Safety) In contravention of Public (Policy)"; "(Affirmative Act) Note this Action Inconsistent (by) Adversary system The Effect) is to mislead or divert) Attention from discovery of Right of Action"; "Special Relationship municipal county As City of New Haven"; "Evidentiary Issue Here"; "Ab) Record this constitutes faith prosecution of a valid c. with Resulting Liability for City of New Haven"; "Judge Knew Has Created Amended Action Not Provided by Law Ins. Policy Inconsistent with Requirements set forth by City of NH (As Per L.C. Gray As Per Freedmans (1996)"; "Am Jur. controls)"; "Remedy Inconsistent with Adversary system) Actual suppression of Evidence by City N.H. City of New Haven Relyd on Statute of Limitation (In which City Created the Running out of Stat. of Limitation utilizing this As Legal Remedy when in fact its A Inadequate state Remedy. (States Attorney off.) Bad faith Prosecution of Case."]

(FRAud) 1 (PerJuRY of contracts NeveR InFact MAde) degress of CARE by chief of Polic
2 (discussing cases both ways) sec 1-48 Business operation trensAction
A ConstructionofLAW InconJuction with sec 38.542 LiAbility Risk Retention Act of 86 by ARolde... Law And Regulation of state of conn, sec 42b-12 Regulation Enforcement). 38A-250 complete operation... Liability by Employer LiAbility Act) sec 38A-372 the Required coverage policy deemed to provide... sec 38A-371 Mandatory Security Requirement (Failure to provide self Insurance (operation prohibited) (the function of statute is evidentiary)

DOCKET NUMBER CV 96 0382068 — SUPERIOR COURT

sec 14-12c Failure to maintain Insurance penalty Assed to fountain And city of N.H. Negligent under statute (City vicarious liable)

TYRONE GRANT — JUDICIAL DISTRICT OF NEW HAVEN (for Personal Injury)

VS. ☆(the Prima Facie CASE (At BAR))☆

AT NEW HAVEN

CITY OF NEW HAVEN, ET AL — SEPTEMBER 28, 1998

sec 7.380 operating under A License, OR Certificate of Authority (Issued) by the Insurance (Dept) obligation is Incurred or Recived As (valid) via the Bond on File by Principal ... (surety)(1-32)

## SECOND AFFIDAVIT OF PAUL JAQUIERY

(A Actionable constitutional violation operating In contravention of Public Policy) And A Injured Person ☆(Aswell)☆

The undersigned, having been duly sworn, hereby deposes and says:

I will file A Note of Issue to court for Face Amount of Policy said checks clearly Relevant And material (55)

1. I am over the age of majority and believe in the solemnity of an oath;

2. I was Claims Manager for The Progressive Insurance Company at the time of the events complained of in the plaintiff's complaint and have personal knowledge of the facts as stated herein;

3. The attached Exhibit A is a true and accurate copy of the insurance policy issued to Fountain's Garage, Inc.;

4. The inception date for this policy was April 1, 1992;

5. Fountain's Garage, Inc. had requested coverage prior to the inception date of April 1, 1992;

clark statement
the Applacation of the standard is Admissible (31)

6. The Progressive Insurance Company did not issue, nor was it requested to issue by Fountains Garage, Inc. or its agent a garage liability policy to Fountain's Garage, Inc. As it was requested to do, Progressive issued an automotive liability insurance policy;

Obstruction of Justices (by) In the First Instances (Construction of the LAW) (sec) Fountain Inc (operating In contravention) of Public Policy by statute (sec 38A-371) Impairment of And Interference with Litigation Right's
(Statute Presumptions) ☆(In violation of plaintiff Legal Rights)☆



see (Page 22)

1\. Why Police Dept Never called Progressive About (Ins) coverage to verify Accuracy

(A misrepresentation (In) Applacation for Licenses)

7\. Progressive was never told, nor did it have reason to know that Fountain's Garage, Inc. was applying for city towing business, or that it was entering into a contract with the City of New Haven for towing business.

(Note No Indication of tow trucks)

8\. The attached Exhibit B is a true and accurate copy of the denial letter sent to counsel for Fountain's garage on May 12, 1995.

(Every Indication of car (ins) policy Inter Alia sec 38-55)

Arbitrary And capricious failure to Reasonable settle third party claim In violation of louisiana statute)

Paul Jaquiery

STATE OF CONNECTICUT)

COUNTY NEW HAVEN ) ss. MILFORD

Subscribed and sworn to before me on this 29 day of September 1998.

In Witness Whereof, I hereunto set my hand and seal.

ROBERT CREPEAU
Notary Public, State of New York
No. 01CR6001071
Qualified in Westchester County
Commission Expires December ... 1999

Notary Public

Certification

this IS to certify All Parties Notified. of motion For Judgment.

the District Court lafayett Blvd Bridgeport Ct 06604.

The City of New Haven 165 church st. corpration counsel 4th Fl t. indeA.

Certificate of service Prose [signature]. 191 Whalley AVE Suite 181 New Haven Ct 06511

thank you Sincerly I Remain [signature] 9.26.06

Osborn CC Po box 100 Somers Ct 06071 - # 109727-E9.

* [signature] Oct 26.06.

Dist. Court Clerk Notified New Home Address Nov. 3. 06. Friday I discharge 191 Whalley AVE Suite 181 New Haven Ct 06511 * Please Forward All * correspondence to this Legal matter there

I thank you IN Advance Sincerly I Remain [signature] Oct 2606